IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **RUSSELL BROWNING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:20cv00223** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **DEBORAH LYNN BALL, *et al.*,** | ) | **By:    Hon. Thomas T. Cullen** |
| | ) | **United States District Judge** |
| **Defendants.** | ) | |

_____

Russell Browning, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that defendants Nurse Ball, Dr. Fox, and Medical Director Bledsoe failed to provide him with adequate medical treatment concerning his broken arm.[1] Nurse Ball, Dr. Fox, and Medical Director Bledsoe filed a motion to dismiss and, after reviewing the pleadings, the court will grant their motion.

**I.**

Browning alleges that on November 10, 2019, while housed at Red Onion State Prison ("Red Onion"), he fell at the gym and broke his wrist. He states that his hand and arm "immediately swelled-up" and he was taken to the medical unit for examination. An unidentified nurse examined him and determined that he needed to go to the hospital. Defendant Nurse Ball ordered x-rays, but Browning was not taken to an "emergency hospital or a real doctor to fix [his] broken wrist." After the x-rays, a nurse confirmed that his wrist and middle finger were broken, but Nurse Ball "still refused [to send him to] a real doctor or

_____

[1] Browning also alleges claims against other defendants and those defendants have filed a motion for summary judgment that the court will address separately.

outside hospital" for treatment. Instead, she placed his arm in "half of a splint by wrapping it with ace [bandage] wraps." Browning was held in the medical unit for the next two days. On the afternoon of November 12, 2019, Browning was released by Nurse Ball back to his cell and given Tylenol and "a sling and the soft ace [bandage] wraps and half splint." Nurse Ball told Browning and building staff that Browning could not participate in recreation, "strenuous activity," or work. The next day, contrary to Nurse Ball's instructions, Browning was taken out of his cell and "made to work," cleaning showers with his broken wrist, despite his "obvious injury and severe pain."

After complaining of swelling and severe pain in his wrist for 10 days, Browning was sent to a local hospital on November 20, 2019, where he was "finally seen by a real doctor." An orthopedic surgeon ordered x-rays of Browning's arm and, after reviewing them, allegedly stated, "Because your arm was not stabilized for 10 days the bones sunk under the others and started fusing wrong at an angle." The surgeon advised Browning that he would "have to perform surgery by rebreaking [Browning's] wrist and w[ould] have to add a plate and screws." Browning's surgery was scheduled for two days later. In the meantime, Browning was taken back to Red Onion. On the night before the surgery, an officer "made" Browning clean the showers again with his "obvious injury and severe pain," while knowing that Browning was scheduled to have surgery the next day. Early the next morning, Browning was taken to the medical unit and then taken to the hospital where he had his surgery. The doctor installed a plate and eight screws into his bones and then his arm was placed in a hard cast from the "base of his knuckles on [his] left hand all the way up [and] wrapping around [his] elbow, keeping

his arm in a bent position." Browning was given "Darvisett"[2] for his "severe pain" and then taken back to Red Onion and placed in a medical cell. When a nurse made rounds that same day, she gave Browning Tylenol for his pain. When Browning asked for the prescription medication that he had received at the hospital, the nurse told him that the VDOC did not allow narcotics. Browning claims that due to the severe pain he experienced, he was not able to sleep more than a few hours.

On November 26, 2019, Nurse Ball "called" Browning to discuss an informal complaint that he had filed. Browning alleges that she was "trying to justify her medical malpractice and gross negligence" by stating that she had given him a splint, a sling, and a soft ace bandage wrap.

Browning argues that as a result of the defendants failing to place his wrist in a hard cast, the wrist healed "wrong" and required surgery to reset it. He also claims that since the surgery, he does not have "full moveability of [his] left hand." He alleges that Nurse Ball "obviously" called defendant Dr. Fox, but that he never came to treat Browning's "serious injury." He also argues that Nurse Ball works under Dr. Fox's authorization. Browning makes no factual allegations against Medical Director Bledsoe in his complaint.[3]

---

[2] It appears Browning is referring to Darvocet-N, a prescription medicine that contains two medicines: propoxyphene and acetaminophen. FDA.gov, *Darvocet-N Medication Guide*, https://www.fda.gov/media/78044/download (last visited Mar. 29, 2021). It is used to relieve pain and is a federally-controlled substance because it is a "strong opioid pain medication that can be abused." *Id.*

[3] Other than in the caption of his complaint, the only other mention of defendant Bledsoe is Bledsoe's signature on a response to an informal complaint that Browning attached to his complaint. In the informal complaint dated November 21, 2019, Browning complains that he broke his arm and Nurse Ball refused to send him to the hospital after x-rays showed that it was broken. The response to the informal complaint states that Mr. Collins had spoken with Browning and that Browning would be put into "another ([the] next) class" and that it would not affect his good-time; that he would not lose his job due to his fractured wrist; that on his medical visit that day, he received medical care "based on appropriate guidelines for a fractured wrist"; and that commissary orders were not allowed in the medical unit.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

Browning alleges that Nurse Bledsoe, Dr. Fox, and Medical Director Bledsoe failed to provide him with adequate medical treatment. The court concludes that Browning's allegations against the defendants do not state a cognizable federal claim and, therefore, will grant their motion to dismiss.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A claim concerning a disagreement between an inmate and medical staff regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D.

Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837.  The prison official's conduct must be so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009); *Estelle*, 429 U.S. at 104 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). In such cases, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs.*, Case No. 3:10cv90, 2011 WL 3489661, at *6 (E.D. Va. 2011); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

Browning has not demonstrated that Nurse Ball, Dr. Fox, or Medical Director Bledsoe were deliberately indifferent to his serious medical needs.[4] Nurse Ball exercised her medical judgment to treat Browning's broken wrist and the resulting pain. She ordered x-rays of his arm, diagnosed his fracture, placed his arm in a splint the same day he was injured, and provided him with pain medication to alleviate the resulting pain. She also directed both Browning and building staff in his housing unit that Browning was not permitted to attend recreation, engage in strenuous activity, or perform work. Although Browning alleges he continued to complain of pain and swelling for the following 10 days, he does not allege that his complaints went to Nurse Ball, Dr. Fox, or Medical Director Bledsoe. Within 10 days of his injury, Browning saw a specialist at an outside facility and received surgery to repair his broken wrist two days after the consultation. Browning also continued to receive pain medication during his recovery. Although Browning takes issue with the treatment he received, a disagreement between an inmate and medical staff concerning course of treatment is not actionable under § 1983. Moreover, to the extent that Nurse Ball may have inadequately splinted Browning's wrist on the day he broke it, he does not allege that any such error was deliberate. Accordingly, the court finds that Browning's complaint fails to state a cognizable

---

[4] Browning does not allege Dr. Fox ever examined or treated him concerning his broken wrist. Instead, he argues that Dr. Fox *should have* treated him and that he is Nurse Ball's supervisor. Even if Dr. Fox should have treated him under some prison or VDOC policy, Browning fails to state a viable claim against Dr. Fox on this basis because he has not shown that Dr. Fox's reliance on Nurse Ball's treatment was deliberately indifferent to Browning's medical needs. Further, Browning makes no factual allegations against Medical Director Bledsoe and, thus, has not demonstrated that she was deliberately indifferent to Browning's medical needs.

medical treatment claim against these defendants and, thus, will grant their motion to dismiss

the medical treatment claims against them.[5]

## IV.

To the extent Browning alleges that Dr. Fox and Medical Director Bledsoe are liable for

his alleged denial of adequate medical treatment because they are supervisors, his claim fails.

Therefore, the court will grant defendants' motion to dismiss these claims.

> In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"[;] and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.

---

[5] To the extent Browning attempts to raise state law gross negligence or intentional infliction of emotional distress claims against the defendants based on his medical treatment, the claims fail. "[G]ross negligence is the 'absence of slight diligence, or the want of even scant care.'" *Colby v. Boyden*, 400 S.E.2d 184, 188 (Va. 1991) (quoting *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987)). It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Griffin v. Shively*, 315 S.E.2d 210, 212 (Va. 1984) (internal quotations omitted). Plaintiffs face a steep hurdle when claiming a defendant's actions amounted to gross negligence. *See Doe v. Russell Cnty. Sch. Bd.*, 292 F. Supp. 3d 690, 716 (W.D. Va. 2018) ("[T]he standard for gross negligence is very high."). If the defendant exercised some degree of diligence or care, however, a gross negligence claim must fail as a matter of law. *Elliott*, 791 S.E.2d at 732-33. In this case, Nurse Ball exercised at least "some degree of care" with respect to Browning's broken wrist, by providing x-rays, a splint to stabilize his wrist, a sling, and pain medication. Accordingly, the court concludes that Browning's allegations do not support a claim of gross negligence.

Emotional distress resulting from a non-tactile tort may be compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and the distress is severe." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). To sustain a cause of action for intentional infliction of emotional distress, the plaintiff must allege and prove that the emotional distress was extreme and so severe that no reasonable person could be expected to endure it. *Id.* at 163; *see Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007); *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (2006). Browning's conclusory allegations do not meet this high legal burden. The defendants made reasoned medical decisions and Browning has not shown that they acted to intentionally harm him or in any outrageous manner. Accordingly, the court concludes that Browning's allegations do not support a claim of intentional infliction of emotional distress.

A plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Browning has failed to allege facts that would establish any of the *Shaw* elements against Dr. Fox or Medical Director Bledsoe. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Accordingly, the court will grant defendants' motion to dismiss the supervisory liability claims against Dr. Fox and Medical Director Bledsoe.

## V.

For the reasons stated, the court will grant the motion to dismiss of Nurse Ball, Dr. Fox, and Medical Director Bledsoe.

**ENTERED** this 31st day of March, 2021.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE