IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RUSSELL BROWNING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00223 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DEBORAH LYNN BALL, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendants. | ) | |

Russell Browning, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate medical treatment for his broken arm and then "forced" him to work on multiple occasions with the broken arm. By memorandum opinion and order entered March 31, 2021, the court granted the defendants' motion to dismiss Browning's medical treatment claims. (*See* ECF Nos. 65 and 66.) This matter is before the court on the remaining defendants' motion for summary judgment as to Browning's cruel and unusual living conditions claims. (*See* ECF No. 52). Having reviewed the record, the court will grant defendants' motion for summary judgment.

**I.**

Browning alleges that after breaking his wrist during a fall on November 10, 2019, prison staff made him clean showers on multiple occasions with his broken wrist, despite his "obvious injury and severe pain" and contrary to a nurse's instructions. Browning alleges that if he had refused to work, he would have received a charge for refusal and would have been fired from his job.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court

properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

### A.

The remaining defendants argue that Browning failed to exhaust available administrative remedies as to his cruel and unusual living conditions claims before filing this action, as required by 42 U.S.C. § 1997e(a). For the following reasons, the court will grant their motion for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of

administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

## B.

In support of the defendants' motion for summary judgment, the defendants provided two affidavits from T. Trapp, the Grievance Coordinator at Red Onion; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Browning's grievance records. (*See* ECF Nos. 53-1 & 53-2.) Operating Procedure 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Grievance Coordinator Trapp explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the claims in this action are grievable under OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of

receipt of the informal complaint, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If a response is not given to the inmate within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the unanswered informal complaint or the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day that they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management

Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

On November 21, 2019, approximately 11 days after he broke his wrist, Browning filed an informal complaint alleging that he was intentionally denied adequate medical treatment for his broken wrist. That informal complaint was received by the Grievance Department on November 26, 2019. On the same day, a nurse responded to the informal complaint and noted that medical care had been provided to Browning.

On December 10, 2019, Browning filed a regular grievance, complaining that he had not received a response to his informal complaint and that he was denied adequate medical treatment for his broken wrist. The grievance was received by the medical department on December 12, 2019. On January 10, 2020, the Assistant Warden deemed Browning's grievance unfounded after determining that Browning had received medical care consistent with guidelines. On January 14, 2020, Browning appealed the grievance response and on February 3, 2020, the appeal was deemed unfounded. Browning attached these grievance records to his complaint.

In unverified responses to the defendants' answer and motion for summary judgment (*see* ECF Nos. 43 and 58), Browning alleges that he also submitted another informal complaint

- 6 -

on November 21, 2019. Browning attached that informal complaint to his responses. In the informal complaint, Browning claimed that unknown officers "made [him] work" with his broken wrist on 10 separate occasions over the course of five days and nights between November 15 and November 21, 2019. The informal complaint is not marked received by the grievance department and according to Grievance Coordinator Trapp, the informal complaint was never received in the grievance department. Browning claims that former Grievance Coordinator Messer destroyed his informal complaint and that, when he resubmitted it again on December 7, 2019, she destroyed it again.

Browning argues that he was prevented from exhausting administrative remedies by former Grievance Coordinator Messer because she "d[e]stroyed" his informal complaints about being forced to work with his broken wrist. But Browning does not allege that he ever filed, or attempted to file, a regular grievance concerning these claims. According to Grievance Coordinator Trapp, when Browning did not receive a response to his informal complaint after 15 days, he should have filed a regular grievance. Browning does not allege that he was prevented from filing a regular grievance, and this is fatal to his claims. Because Browning does not allege that he further pursued the claims raised in the allegedly destroyed informal complaint, and that prison officials prevented him from doing so, the court finds that Browning failed to exhaust available administrative remedies.

## IV.

For the reasons stated, the court will grant the defendants' motion for summary judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 13th day of October, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE